# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| MONAUZRE BAUGH, aka MAVEN, an individual, § § § Plaintiff, § § vs. § § A.H.D. HOUSTON, INC. d/b/a § CENTERFOLDS; ALI DAVARI and § HASSAN DAVARI, individuals, § § Defendants. § § | Case No.: 4:20-cv-291 <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO 9 U.S.C. §4

Plaintiff MONAUZRE BAUGH (Plaintiff) files her *Response in Opposition to Defendant A.H.D. Houston, Inc. d/b/a Centerfolds' Motion to Dismiss Pursuant to 9 U.S.C. §4*, and in opposition thereof states as follows:

### I. INTRODUCTION

1. Plaintiff commenced this collective action on January 24, 2020 seeking relief under the Fair Labor Standards Act (FLSA). (Doc. 1). Plaintiff asserts Defendant A.H.D. Houston, Inc. d/b/a Centerfolds (Centerfolds), and Centerfold's owners/officers Ali Davari[1] and Hassan Davari[2] misclassified her and other exotic dancers as independent contractors – even though legally the dancers were employees – in order to avoid wage, tax, and other employer- related obligations. *Id.* All of Plaintiff's claims are statutory and arise from her employment at Centerfold. *Id*

2. Since Plaintiff's complaint was filed, two other Plaintiffs have filed their consent to join the action. *See* Docs. 14 and 15.

3. Centerfolds' motion correctly references a previous Southern District of Texas ruling issued

---

[1] Defendant Ali Davari was served on February 18, 2020. Ali Davari has yet to file an answer or other responsive pleading in this matter.
[2] Defendant Hassan Davari has not yet been served in this matter. Plaintiff will likely be forced to file a motion for substituted service as to this individual defendant.

by Judge Rosenthal in 2015 in a similar FLSA matter against the same Defendants.[3] However, Centerfolds' motion fails to identify Judge Rosenthal's determination that several of the terms in the contracts at issue in the *Coronado* case were held to be unconscionable, effecting the validity (and enforceability) of the arbitration clauses at issue therein.[4] The same terms, previously ruled unconscionable are <u>still</u> included in Plaintiff's contracts at issue in this matter, despite Centerfolds, Ali Davari, and Hassan Davari's previous notice of such terms' unconscionability.

4.      Not only have Defendants continued to intentionally include unconscionable terms in their agreements with dancers like Plaintiff, Defendants 'doubled-down' in later contracts by adding more unconscionable terms into their contract.[5] Defendants are fully aware the terms of their contract are in contravention of the FLSA and case law interpreting such, but have continued to abuse their position of power by adding abusive and unconscionable to terms to the agreements any dancer is forced to sign in order to work at Defendants' clubs. Defendants' actions can only be interpreted as intentionally and willfully violating federal statutory law.

5.      Plaintiff asks the Court to deny Centerfolds' Motion to Dismiss because the arbitration agreements at issue are unconscionable and the unconscionable provisions of the contracts cannot be severed, therefore making the arbitration clause, and any delegation of alleged arbitral issues, invalid and unenforceable. Alternatively, Plaintiff asks the Court to determine specific provisions of the contracts at issue are unconscionable and sever such portions from the contract prior to delegating any claims to arbitration. Finally, Plaintiff asks the Court to stay this matter, as opposed to dismissal, because other parties (both Plaintiffs and Defendants) are involved whose claims and matters will not be determined by Centerfolds' Motion to Dismiss.

---

[3] *Coronado v. D.N.W. Houston, Inc.*, 2015 WL 5781375, (S.D. Tex. Sept. 30, 2015).
[4] *Id.* at *9-10.
[5] *See* Centerfolds' Motion to Dismiss (Doc. 13), Exhibits A and B.

## II. ARGUMENT & AUTHORITIES

### A. Legal Authorities

6. The court must determine whether the parties agreed to arbitrate the dispute at issue. This determination requires two separate inquiries: 1) whether the parties entered into a valid arbitration agreement; and 2) whether the arbitration agreement covers the claim at issue.[6] *After* the Court performs the first step of the analysis *and* if the party seeking arbitration argues there is a delegation clause, *then* the only question is whether the delegation clause is in fact a delegation clause.[7] (emphasis added). Plaintiff challenges the validity and, therefore, enforceability of the 2016, 2019, and 2020 arbitration agreements because contract provisions outside the arbitration clauses, when applied, make the arbitration clauses at issue unconscionable.[8]

7. State law is applied to decide whether the arbitration agreements are valid and, therefore, enforceable.[9] The court must evaluate the unconscionability of the arbitration clause itself, as opposed to the contract as a whole.[10] Unconscionable contracts are unenforceable under Texas law.[11] Under Texas law, unconscionability includes both procedural unconscionability, referring to the circumstances surrounding the adoption of the arbitration provision; and substantive unconscionability, referring to the fairness of the arbitration provision itself.[12] The party seeking to invalidate an arbitration agreement has the burden of proving unconscionability.[13] "Federal courts, analyzing the enforceability of arbitration provisions relating to federal statutory claims, have noted such contracts are not enforceable when a party is forced to 'forgo the substantive rights

---

[6] *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006); *Edwards v. Doordash, Inc.,* 888 F3d 738, 743 (5th Cir. 2018), citing *Klein v. Nabors Drilling USA, L.P.,* 710 F.3d 234, 236 (5th Cir. 2013).
[7] *Edwards v. Doordash, Inc.,* 888 F3d 738, 743-744 (5th Cir. 2018), citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).
[8] *Rent-A-Center, West Inc. v. Jackson*, 561 U.S. 63, 73-74, 130 S.Ct. 2772 (2010).
[9] *First Options v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.3d.2d 985 (1995).
[10] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004).
[11] *In re Poly-America, L.P.,* 262 S.W3d 337, 348 (Tex. 2008).
[12] *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex. 2002).
[13] *Id.* at 572.

afforded by the statute,' as opposed to merely 'submit[ting] to resolution in an arbitral, rather than a judicial, forum.'"[14]

### B. THE ARBITRATION AGREEMENTS IN THE 2016, 2019, AND 2020 AGREEMENTS ARE UNCONSCIONABLE

8. The arbitration clauses in the 2016, 2019, and 2020 agreements[15] are unconscionable because each will result in significantly greater costs than Plaintiff would incur in litigation. Plaintiff refers to each of the unconscionable terms in turn.

*Attorneys' fees shifting provisions*

9. Attorneys' fees and costs are mandatory under the FLSA to plaintiffs who prevail on their claims for unpaid minimum wage or overtime compensation.[16] The FLSA does not specifically provide for a fee-shifting provision for a prevailing defendant.[17] Fee shifting provisions in arbitration agreements prevent litigants from vindicating their FLSA causes of action, and thus violate the FLSA.[18]

10. The 2016, 2019, and 2020 agreements all contain fee shifting provisions, entitling Centerfolds to recover attorneys' fees whether they win or lose arbitration. The 2016 agreement

---

[14] *In re Poly-America, L.P.,* 262 S.W3d 337, 348 (Tex. 2008), citing *Mitsubishi Motors Corp, v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
[15] Plaintiff uses herein "2016 agreement," to refer to Centerfolds' Motion to Dismiss Exhibit C (Doc. 13-3), "2019 agreement," to refer to Centerfolds' Motion to Dismiss Exhibit B (Doc. 13-2), and "2020 agreement," to refer to Centerfolds' Motion to Dismiss Exhibit A (Doc. 13-1).
[16] 29 U.S.C. §216(b).
[17] *See Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009).
[18] *Coronado v. D.N.W. Houston, Inc.*, 2015 WL 5781375, (S.D. Tex. Sept. 30, 2015); *See also Sanchez v. Nitro–Lift Techs., LLC*, 762 F.3d 1139, 1148 (10th Cir.2014) (fee-shifting provisions would be invalid under prevailing Tenth Circuit and Supreme Court law); *Quilloin*, 673 F.3d at 230–31 ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."); *Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 203 (3d Cir.2010) (arbitration agreement's "restriction on the arbitrator's ability to award attorney's fees, costs, and expenses [to the plaintiffs was] substantively unconscionable" because it "undermine[d] the legislative intent behind fee-shifting statutes like Title VII"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 669 (6th Cir.2003) (en banc) (district court erred in "holding that the cost-splitting provision in the ... arbitration agreement was enforceable");*Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir.2009) (the FLSA "provides for reasonable attorney's fees [and] the parties cannot contract in derogation of FLSA's provisions"); *see also Lott v. Buccaneer Satellite*, Civ. Action No. 9:11–cv–173, Slip Op. at 7 (E.D. Tex. Aug. 10, 2012) (provision shifting all costs of arbitration and prevailing party fees to loser unconscionable); *Nesbitt v. FCNH, Inc.*, 74 F.Supp.3d 1366, 1374–75 (D.Colo.2014) (finding similar fee-shifting provision unenforceable).

includes at par. 11, "In the event any action is commenced to enforce or interpret the terms or conditions of this Agreement, Centerfolds shall, in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees."[19] The 2016 agreement also includes at par. 12, "THE DANCER SHALL INDEMNIFY, HOLD HARMLESS AND PAY FOR CENTERFOLDS' DEFENSE FROM AND AGAINST ANY AND ALL CLAIMS, LOSSES OR LIABILITY, INCLUDING ATTORNEYS' FEES, ARISING FROM OR RELATING TO THIS AGREEMENT OR THE DANCER'S RELATIONSHIP WITH CENTERFOLDS, INCLUDING LIABILITY ARISING FROM CENTERFOLDS' OWN NEGLIGENCE."[20] The 2016 agreement also provides at par. 13(j), "EACH PARTY SHALL BEAR THEIR OWN ATTORNEYS' FEES, COSTS AND FILING FEES, EXCEPT AS MAY BE ORDERED BY THE ARBITRATOR PURSUANT TO THE ARBITRATION RULES." The 2019 and 2020 agreements have the exact same provisions at par. 11, 12, and 13(j) respectively.[21]

11. The fee-shifting provisions addressed herein are directly in contravention of the fee provisions laid out in the FLSA. Therefore, Plaintiff requests this Court find the fee-shifting provisions in paragraphs 11, 12 and 13(j) of the 2016, 2019, and 2020 agreements to be unconscionable as applied to the arbitration provisions, thereby invalidating the arbitration clauses at issue and preventing the delegation of any such claims to an arbitrator.

### Provisions Requiring Prevailing Plaintiffs to Return Tips

12. Plaintiff further contends the 2016, 2019, and 2020 arbitration agreements are unconscionable and therefore unenforceable under Texas law because the agreements require Plaintiff to reimburse Centerfolds the tips received when Plaintiff worked there if she prevails on

---

[19] Doc. 13-3.
[20] Doc. 13-3.
[21] Doc. 13-1 and 13-2.

her FLSA claims.[22] The clause(s) provide if a dancer is determined to be an employee as opposed to an independent contractor, the dancer must reimburse Centerfolds all monies she received while performing at Centerfolds.[23] The clause(s) further provide Centerfolds is entitled to an offset of any wage obligation, if the dancer does not return her monies after a determination the dancer is an employee.[24] The clause(s) do not limit the offset to the amount necessary to bring Plaintiff's overall wages to the minimum wage required by the FLSA and the 'tip credit' provision of §203(m) of the FLSA.[25]

13.     These provisions are unconscionable because the clause(s) waive the Plaintiff's substantive FLSA right to be paid a minimum wage. As such, Plaintiff requests the Court determine paragraph 15 of the 2016, 2019, and 2020 agreements to be unconscionable as applied to the arbitration provisions, thereby invalidating the arbitration clauses at issue and preventing the delegation of any such claims to an arbitrator.

C.     **SEVERABILITY**

14.     The 2016, 2019, and 2020 arbitration clauses all include a severability provision.[26] The severability provision reads in part, "If any term or provision, or portion <u>of this arbitration policy</u> is declared void or unenforceable, it shall be severed and the remainder of this arbitration policy shall be enforceable."[27] (emphasis added). Paragraph 13 of each of the respective agreements is entitled "Arbitration Policy."[28] By its own terms, the severability provisions of the 2016, 2019 and 2020 agreements apply only to terms or provisions *within* the arbitration policy, which is encompassed only in paragraph 13 of the respective agreements. The arguments made as to

---

[22] *See* Doc. 13-1 ¶15, Doc. 13-2 ¶15, Doc. 13-3 ¶15.
[23] *Id.*
[24] *Id.*
[25] 29 U.S.C. §203(m)(1-2).
[26] See Doc. 13-1 ¶13(I), Doc. 13-2 ¶13(I), Doc. 13-3 ¶13(I).
[27] *Id.*
[28] *Id.*

severability of the like provisions in the *Coronado* case did not include an analysis of the breadth of the severability provision.

15. The fee-shifting provisions in paragraphs 11 and 12 of the 2016, 2019 and 2020 agreements are not included in the "Arbitration Policy" defined in the agreements, and thus not subject to the severability provision included in the "Arbitration Policy."[29] The severability provision in paragraph 13(I) of the 2016, 2019, and 2020 agreements clearly does not apply to the unconscionable terms in paragraphs outside of the "Arbitration Policy."

16. Courts have refused to sever unconscionable provisions when doing so would require rewriting the contract based on guessing at the parties' intent.[30] Plaintiff asks the Court to determine not only that the fee provisions in paragraphs 11 and 12 of the 2016, 2019, and 2020 agreements are unconscionable, but that such are not subject to the severability provision in paragraph 13(I) of the respective agreements, and therefore invalidate arbitration agreements at issue.

17. Alternatively, should the Court determine the severability clause does apply to the provisions urged by Plaintiff to be unconscionable, or for any other reason such provisions are severable, Plaintiff asks the Court to make the determination that paragraphs 11, 12, 13(J) and 15 in the 2016, 2019, and 2020 agreements are unconscionable and severed from the claims to be delegated to arbitration. Plaintiff requests the Court determine such severance of claims prior to enforcement of the delegation clause, as the 2016, 2019 and 2020 arbitration agreements can only be valid if the unconscionable provisions have first been severed.[31]

---

[29] *Id.*
[30] *Coronado v. D.N.W. Houston, Inc.*, 2015 WL 5781375, at *11 (S.D. Tex. Sept. 30, 2015).
[31] *Edwards v. Doordash, Inc.,* 888 F3d 738, 743-744 (5th Cir. 2018), citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016).

### D. IF CENTERFOLDS' MOTION IS GRANTED, THE CASE SHOULD BE STAYED

18. If for any reason the Court orders any portion of the claims of the matter to arbitration, Centerfolds' request this case be dismissed pending arbitration must be denied. Instead, "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."[32] Only when *all* of the issues are arbitrable is a dismissal appropriate.[33]

19. Clearly, Centerfolds' motion to dismiss does not include all current parties to this action, so dismissal is inappropriate. Defendants Ali Davari and Hassan Davari have not filed any responsive pleading in this matter and are not signatories to the contracts at issue in Centerfolds' pending motion. Additionally, two new Plaintiffs[34] have been added to this lawsuit since the filing of Centerfolds' motion to dismiss. These new Plaintiffs are not a part of Centerfolds' requested dismissal for arbitration.

20. Therefore, dismissal is inappropriate because all issues raised in this case will not be submitted to arbitration under the current motion. Plaintiff requests the Court stay the matter, if the Court determines any portion of Plaintiff's claims must go through the arbitration process.

### III. PRAYER

WHEREFORE, Plaintiff Monauzre Baugh respectfully prays this Honorable Court enter an order denying *Defendant A.H.D. Houston, Inc. d/b/a Centerfolds' Motion to Dismiss*, or alternatively, the Court Orders paragraphs 11, 12, 13(J) and 15 unconscionable and severed from the claims delegated to arbitration, and that the matter should be stayed if any claims are determined

---

[32] 9 U.S.C. § 3.
[33] *Ruiz v. Donahoe*, 784 F.3d 247, 249, n.13 (5th Cir. 2015), citing *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992)
[34] Plaintiff Kiersten Middaugh's notice of consent to sue was filed March 26, 2020. (Doc. 14). Plaintiff Ashley Osborne's notice of consent to sue was filed March 30, 2020. (Doc. 15).

to be arbitrable. Plaintiff further seeks any additional relief as this Court deems just and proper.

                                                     Respectfully Submitted,

                                                     **HUGHES ELLZEY, L.L.P.**

Dated: April 2, 2020                     */s/ Jarrett L. Ellzey*
                                                     Jarrett L. Ellzey
                                                     Texas Bar No. 24040864
                                                     W. Craft Hughes
                                                     Texas Bar No. 24046123
                                                     Leigh Montgomery
                                                     Texas Bar No. 24052214
                                                   1105 Milford Street
                                                   Houston, Texas 77066
                                                   Telephone: (713) 554-2377
                                                   Fax: (888) 995-3335
                                                   jarrett@hughesellzey.com
                                                   craft@hughesellzey.com
                                                   leigh@hughesellzey.com

# CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Southern District of Texas on April 2, 2020 and served on all counsel of record who have appeared and consented to electronic notification *via* CM/ECF.

***Via CM/ECF***
Casey T. Wallace
Wallace & Allen, L.L.P.
440 Louisiana, Ste. 1500
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 227-0104
cwallace@wallaceallen.com

William X. King
440 Louisiana, Ste. 1500
Houston, Texas 77002
Telephone: (713) 227-1744
Facsimile: (713) 227-0104
wking@wallaceallen.com

***Counsel for Defendant A.H.D., Inc. d/b/a Centerfolds***

                          */s/ Jarrett L. Ellzey*
                          Jarrett L. Ellzey