IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MONAUZRE BAUGH, a/k/a MAVEN, an individual, § § § | |
| Plaintiff, § § | |
| v. § § | CIVIL ACTION NO. H-20-0291 |
| A. H. D. HOUSTON, INC. d/b/a CENTERFOLDS, ALI DAVARI, and HASSAN DAVARI, individuals, § § § § | |
| Defendants. § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Monauzre Baugh, also known as Maven ("Plaintiff"), asserts individual and collective claims for minimum wage, overtime, and tip violations under the Fair Labor Standards Act against A.H.D. Houston Inc. d/b/a Centerfolds, ("A.H.D."), Ali Davari, and Hassan Davari (collectively, "Defendants").[1] Pending before the court are Defendant's Motion to Dismiss Pursuant to 9 U.S.C. § 4 ("Motion to Dismiss and Compel Arbitration") (Docket Entry No. 13) and Davari Defendants' Motion to Join Defendant A.H.D. Houston, Inc.'s Motion to Dismiss ("Davaris' Motion to Join") (Docket Entry No. 24). For the reasons explained below, the Motion to Dismiss and Compel Arbitration and the Davaris' Motion to Join will be granted.

---

[1] Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, p. 1 ¶ 1, pp. 15-17 ¶¶ 90-106. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

## I. Factual and Procedural Background

From 2016 through 2019 Plaintiff worked as a dancer at Centerfolds, a club owned and operated by Defendants.[2] Plaintiff alleges that Defendants misclassified her and other dancers as independent contractors rather than as employees and failed to pay federally required wages for the hours they worked.[3]

Plaintiff signed three License and Access Agreements while working at Centerfolds, the most recent on January 3, 2020.[4] All three agreements ("the Contracts") contain arbitration and dispute-resolution clauses that are identical in the parts relevant to this motion.[5] The Contracts contain an Arbitration Policy that states:

> 13. Arbitration Policy.
>
> (A) The parties agree that any and all covered disputes, claims and controversies arising out of or relating to

---

[2]Id. at 1-2 ¶ 2.

[3]Id.

[4]AHD. Houston, Inc. d/b/a Centerfolds License and Access Agreement signed on January 3, 2020 ("2020 Agreement"), Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-1, pp. 7, 13; AHD. Houston, Inc. d/b/a Centerfolds License and Access Agreement signed on September 12, 2019 ("2019 Agreement"), Exhibit B to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-2, pp. 5, 17; A.H.D. Houston, Inc. d/b/a Centerfolds License and Access Agreement signed on September 29, 2016 ("2016 Agreement"), Exhibit C to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-3, pp. 4, 16.

[5]Because the disputed portions of the Contracts are the same and the parties do not argue there are differences, the court will refer only to the 2020 Agreement in discussing the agreements collectively.

> this Agreement and/or any matter related to alleged employment, alleged terms or conditions of employment, or any alleged relationship other than that of a licensee that the Dancer may have against Centerfolds, its owners, directors, officers, managers, employees, or agents . . . or that Centerfolds may have against the Dancer shall be submitted exclusively to and determined exclusively by binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").
>
> (B) "Covered disputes, claims and controversies" include . . . any and all disputes, claims and controversies that arose before and/or after this Arbitration Policy went into effect, arising under . . . the Fair Labor Standards Act ("FLSA") . . .
>
> . . .
>
> (J) . . . Each Party shall bear their own attorney's fees, costs and filing fees, except as may be ordered by the arbitrator pursuant to the arbitration rules.[6]

The Contracts also contain other provisions that apply to claims and disputes that might arise from the parties' relationship:

> 11. In the event, any action is commenced to enforce or interpret the terms or conditions of this Agreement, Centerfolds shall, in addition to any costs or other relief, be entitled to recover its reasonable attorneys' fees.
>
> 12. The Dancer shall indemnify, hold harmless and pay for Centerfolds' defense from and against any and all claims, losses or liability, including attorneys' fees, arising from or relating to this Agreement or the Dancer's relationship with Centerfolds, including liability arising from Centerfolds' own negligence.
>
> . . .

---

[6]2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-1, p. 9 ¶¶ 13(A)-(B), p. 12 ¶ 13(J) (capitalization removed).

> 15. Centerfolds and the Dancer agree that if, upon any ruling or decision of an arbitrator, court or other tribunal with jurisdiction over the matter that the relationship between Centerfolds and the Dancer is one of employer and employee, the Dancer shall surrender, reimburse, and pay to Centerfolds all money received by the Dancer at any time she performed on the premises of Centerfolds - all of which would otherwise have been collected and kept by Centerfolds had the parties not entered into this License Agreement, and the Dancer shall immediately provide a full accounting to Centerfolds of all income which she received during the relevant time period. In the event that the Dancer fails to repay Centerfolds as provided in this paragraph, Centerfolds shall be entitled to offset any wage obligation by any amount not returned by the Dancer.[7]

On January 24, 2020, Plaintiff filed her Complaint alleging claims for minimum wage, overtime, and tip violations under the Fair Labor Standards Act ("FLSA").[8] On March 12, 2020, Defendants filed their Motion to Dismiss and Compel Arbitration contending that this action must be dismissed or stayed because an enforceable arbitration agreement exists between Plaintiff and A.H.D.[9] Plaintiff responded on April 2, 2020, contending that the arbitration clause is unenforceable because it contains unconscionable provisions that are not severable from the

---

[7] Id. at 9 ¶¶ 11-12, 12-13 ¶ 15 (capitalization removed).

[8] Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[9] Motion to Dismiss and Compel Arbitration, Docket Entry No. 13, p. 1.

arbitration agreement.[10] A.H.D. replied on April 9, 2020, in which it agreed that if the court compels arbitration the action may be stayed instead of dismissed.[11] Defendants Ali and Hassan Davari filed their Motion to Join on April 16, 2020.[12] Plaintiff filed a response to the Davaris' Motion to Join on May 1, 2020.[13]

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, et seq., creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 (1983) (citing Prima Paint Corp. v. Flood & Conklin Manufacturing Corp., 87 S. Ct. 1801 (1967)). "[W]hen a court interprets [] provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1218 (1995) (quoting

---

[10]Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Pursuant to 9 U.S.C. § 4 ("Plaintiff's Response"), Docket Entry No. 17, p. 2 ¶ 5.

[11]Defendant's Reply in Support of Motion to Dismiss Pursuant to 9 U.S.C. § 4 ("A.H.D.'s Reply"), Docket Entry No. 20, p. 7.

[12]Davaris' Motion to Join, Docket Entry No. 24.

[13]Plaintiff's Response in Opposition to Defendants Ali and Hassan Davari's Motion to Dismiss Pursuant to 9 U.S.C. § 4 ("Plaintiff's Second Response"), Docket Entry No. 27.

<u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 109 S. Ct. 1248, 1255 (1989)).

Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity. 9 U.S.C. § 2. Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3. Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. 9 U.S.C. § 4. Courts apply a two-step inquiry when ruling on a motion to compel arbitration. <u>Edwards v. Doordash, Inc.</u>, 888 F.3d 738, 743 (5th Cir. 2018). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." <u>Id.</u>

The court applies state contract law to decide the validity of an agreement to arbitrate. <u>First Options of Chicago, Inc. v. Kaplan</u>, 115 S. Ct. 1920, 1924 (1995). "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced <u>unless</u> they are invalid under principles of state law that govern all contracts." <u>Iberia Credit Bureau, Inc. v. Cingular Wireless LLC</u>, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original). General state-law contract defenses — including fraud, duress,

unconscionability, or waiver — may invalidate arbitration agreements. See Doctor's Associates, Inc. v. Casarotto, 116 S. Ct. 1652, 1656 (1996). But the FAA preempts state-law contract defenses that "apply only to arbitration or [] derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011). Challenges to the validity (rather than the existence) of the parties' contract as a whole rather than specifically that of the agreement to arbitrate are for the arbitrator, not the court, to decide. See Prima Paint, 87 S. Ct. at 1807 (the arbitrator, not the court, is to decide a claim that the agreement was fraudulently induced); Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1209 (2006) (a challenge to an agreement containing an arbitration clause, as opposed to a challenge to the arbitration clause itself, is for the arbitrator to decide).

### III. Analysis

Plaintiff does not dispute the existence of the arbitration agreement as expressed by the Arbitration Policy in the Contracts nor that her claims are within its scope. She argues that the arbitration agreement is not enforceable because the fee-shifting provisions in Paragraphs 11, 12, and 13(J) and the tip-return provision in Paragraph 15 are unconscionable.[14] Plaintiff argues that these provisions are unconscionable "as applied" to the

---

[14]Plaintiff's Response, Docket Entry No. 17, pp. 5-6 ¶¶ 11-12.

arbitration provision and thus the agreement to arbitrate unenforceable.[15] Defendants respond that the Arbitration Policy contains a binding delegation clause that requires the court to compel arbitration without deciding arbitrability under the agreement.[16] Defendants also argue that the provisions identified by Plaintiff do not specifically apply to the arbitration clause and thus their conscionability goes to the validity of the contract as a whole and must be determined by an arbitrator, that the provisions are not unconscionable, and that even if the provisions apply to the arbitration clause, they are severable.[17]

### A. Existence of a Delegation Clause

The court may only consider Plaintiff's arguments if the parties have not delegated the issue to an arbitrator. The Supreme Court has explained that there are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. First Options, 115 S. Ct. at 1923. The third question turns on what the parties have agreed to. The court decides arbitrability unless the parties have "clearly and unmistakably" agreed to submit it to the arbitrator. Id. at 1923-24; Crawford Professional Drugs, Inc. v. CVS Caremark Corp.,

---

[15] Id. at 5 ¶ 11, 7 ¶ 15.

[16] A.H.D.'s Reply, Docket Entry No. 20, pp. 3-4.

[17] Id. at 2-3.

-8-

748 F.3d 249, 262 (5th Cir. 2014). Such an agreement is typically contained in a delegation clause within the agreement to arbitrate. See, e.g., Doordash, 888 F.3d at 734-744. "[A]bsent a challenge to the delegation clause itself, [the court] will consider that clause to be valid and compel arbitration" because a delegation clause is severable from the underlying agreement to arbitrate. Id. at 744. The court therefore must first determine whether the Arbitration Policy delegates arbitrability to the arbitrator. See id. at 743-44.

Since Plaintiff does not contest the arbitration agreement's existence, the court need only consider whether the agreement delegates arbitrability to the arbitrator. See id. at 745 ("[W]e look first to whether there is an agreement to arbitrate and second to whether that agreement contains a valid delegation clause."). The court cannot "assume that the parties agreed to arbitrate arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (quoting AT & T Technologies, Inc. v. Communications Workers of America, 106 S. Ct. 1415, 1418 (1986)). Defendants argue that Paragraph 13(A) of the contracts is a delegation clause.[18] That paragraph states:

> The parties agree that any and all covered disputes, claims and controversies arising out of or relating to

---

[18]Motion to Dismiss and Compel Arbitration, Docket Entry No. 13, p. 4.

> this Agreement and/or any matter related to alleged employment, alleged terms or conditions of employment, or any alleged relationship other than that of a licensee that the Dancer may have against Centerfolds, its owners, directors, officers, managers, employees, or agents . . . or that Centerfolds may have against the Dancer shall be submitted exclusively to and determined exclusively by binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq.[19]

The clause does not include arbitrability as an issue the parties agree should be determined by the arbitrator. "[T]he law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' — for in respect to this latter question the law reverses the presumption." First Options, 115 S. Ct. at 1924 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3353 (1985)). Absent a clear showing that the parties agreed to have arbitrators decide the question of arbitrability, the court decides it. Id. at 1925-26. Because Paragraph 13(A) is silent as to who should decide arbitrability, Defendants have not met their burden to show that it is "clear and unmistakable" that the parties agreed to delegate the issue to the arbitrator. See Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Manufacturing, 765 F.3d 396, 410 (5th Cir. 2014).

---

[19] 2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-1, p. 9 ¶ 13(A) (capitalization removed).

The court will therefore consider Plaintiff's arguments as to the unconscionability and unenforceability of the arbitration agreement.

## B.  Contractual Provisions that the Court May Consider

The court may only decide the validity of the arbitration agreement as severed from the remainder of the contract. Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010); see also Buckeye, 126 S. Ct. at 1209 ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Plaintiff argues that the provisions in Paragraphs 11 and 12 and the tip-return provision in Paragraph 15, which are not part of the Contracts' Arbitration Policy, are unconscionable "as applied" to the agreement to arbitrate.[20] Defendants respond that these provisions are not part of the arbitration agreement and thus they do not affect the enforceability of the agreement to arbitrate and that their potential unconscionability is for the arbitrator to decide.[21] The court must therefore address whether Paragraphs 11, 12, and 15 affect the agreement to arbitrate before deciding its enforceability.

"[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Rent-A-Center, 130

---

[20]Plaintiff's Response, Docket Entry No. 17, p. 5 ¶ 11, p. 6 ¶ 13.

[21]A.H.D.'s Reply, Docket Entry No. 20, p. 3.

S. Ct. at 2778. To oppose the enforcement of an agreement to arbitrate on the basis of its validity on grounds such as unconscionability, a challenge must "be directed specifically to the agreement to arbitrate." Id. When another provision in the contract affects the arbitration agreement, the court may consider the validity of that provision as specifically applied to the arbitration agreement. See id. at 2780. In particular, provisions that set procedures for dispute resolution that apply to arbitration may be relevant to the arbitration clause's validity. See id. (explaining that procedural provisions in a contract, such as fee arrangements, might support an unconscionability challenge to a different, severable arbitration provision).

Paragraph 11 is a fee-shifting provision that applies to "any action [] commenced to enforce or interpret the terms or conditions of" the contract.[22] Paragraph 12 applies to "Centerfolds' defense from and against any and all claims, losses or liability, including attorneys' fees, arising from or relating to this Agreement or the Dancer's relationship with Centerfolds."[23] Because these terms apply to legal disputes related to the contract regardless of the forum, they are relevant to the conscionability of the agreement to arbitrate any dispute related to the contract. The court must therefore consider these provisions' conscionability as applied to the arbitration agreement before it may compel arbitration.

---

[22]2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No. 13-1, p. 9 ¶ 11.

[23]Id. at 9 ¶ 12 (capitalization removed).

-12-

The tip-return provision in Paragraph 15 applies "upon any ruling or decision of an arbitrator, court or other tribunal . . . that the relationship between Centerfolds and the Dancer is one of employer and employee" and requires the Dancer to "surrender, reimburse and pay" tips to Centerfolds that the Dancer previously received while performing there.[24] Unlike Paragraphs 11 and 12, this clause does not govern dispute-resolution processes or arbitration. Instead of affecting the arbitration process, it creates a conditional, contractual right. Plaintiff's challenge to the validity of that contractual right is not specific to the arbitration agreement and therefore not for the court to decide. See Rent-A-Center, 130 S. Ct. at 2778.

C.  **Unconscionability of the Arbitration Agreement**

Plaintiff argues that the fee-shifting provisions in Paragraphs 11, 12, and 13(J) are unconscionable because they contravene the FLSA's mandatory award of attorney's fees and costs for prevailing plaintiffs. See 29 U.S.C. § 216(b). Defendant contends the provisions are not unconscionable because they do not contravene the availability of attorney's fees for a prevailing FLSA plaintiff.[25]

The party seeking to invalidate an arbitration agreement has the burden of proving unconscionability. In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002). "An arbitration agreement covering

---

[24] Id. at 12 ¶ 15 (capitalization removed).

[25] A.H.D.'s Reply, Docket Entry No. 20, pp. 4-6.

statutory claims is valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" In re Poly-America, L.P., 262 S.W.3d 337, 349 (Tex. 2008). Arbitration provisions relating to federal statutory claims are not enforceable "when a party is forced to 'forgo the substantive rights afforded by the statute,' as opposed to merely 'submit[ting] to resolution in an arbitral, rather than a judicial, forum.'" Id.

The FLSA states that courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." See 29 U.S.C. § 216(b). "The FLSA's fee-shifting provision refers only to a prevailing plaintiff . . . and says nothing of a prevailing defendant." Mach v. Will County Sheriff, 580 F.3d 495, 501 (7th Cir. 2009). Instead, the "FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith." Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1437 (11th Cir. 1998). The challenged contractual clauses are unconscionable only if their application would result in an arbitration process that contravenes or unfairly obstructs these statutory provisions.

1. Paragraph 11

Paragraph 11 of the agreement states that "in the event, any action is commenced to enforce or interpret the terms or conditions

of this Agreement, Centerfolds shall . . . be entitled to recover its reasonable attorneys' fees."[26] A.H.D. argues that this provision is not unconscionable because it only provides attorney's fees in breach-of-contract actions and that FLSA claims do not require enforcement or interpretation of employment contracts.[27] See Parrish v. Premier Directional Drilling, L.P., 917 F.3d 369, 388 (5th Cir. 2019) (holding that economic reality, not contractual language, controlled whether a plaintiff was an independent contractor or an employee under the FLSA). By its plain language, Paragraph 11 applies only to actions "to enforce or interpret" the contract. Because Plaintiff does not explain how Paragraph 11 would apply to an FLSA action and contravene its award of attorney's fees, the court concludes she has not met her burden to establish that Paragraph 11 is unconscionable as applied to the arbitration agreement.

2. Paragraph 12

Paragraph 12 states that "[t]he Dancer shall indemnify, hold harmless and pay for Centerfolds' defense from and against any and all claims, losses or liability, including attorneys' fees, arising from or relating to this Agreement or the Dancer's relationship with Centerfolds, including liability arising from Centerfolds' own

---

[26] 2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No 13-1, p. 9 ¶ 11.

[27] A.H.D.'s Reply, Docket Entry No. 20, p. 4.

negligence."[28] A.H.D. argues that this provision is an indemnification clause intended to apply to third-party tort claims against it for Plaintiff's actions while working and does not apply to Plaintiff's own FLSA claims against it.[29]

"In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). "Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." Reilly v. Rangers Management, Inc., 727 S.W.2d 527, 529-30 (Tex. 1987). Paragraph 12 uses the terms "indemnify" and "hold harmless," which are typical of indemnification clauses. See Derr Construction Co. v. City of Houston, 846 S.W.2d 854, 859 (Tex. App.—Houston [14th Dist.] 1992). Indemnity provisions do not "apply to claims between the parties to the agreement." Id. at 858. For such a clause to be found to be "more than a mere indemnity provision," it must include other language that shows an intent for it to apply to claims between the parties. See, e.g., id. at 858-859. The court concludes that Paragraph 12's use of the phrasing "shall indemnify, hold harmless, and pay for" plainly expresses the parties' intent to adopt an

---

[28]2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No 13-1, p. 9 ¶ 12 (capitalization removed).

[29]A.H.D.'s Reply, Docket Entry No. 20, p. 5.

indemnification clause, and that the clause's language does not indicate that it should apply to claims between the parties. Accordingly, Paragraph 12 does not apply to Plaintiff's potential FLSA claims against A.H.D.; and therefore Plaintiff has not shown that it is unconscionable as applied to the arbitration agreement.

3. Paragraph 13(J)

Paragraph 13(J) states that "[e]ach party shall bear their own attorney's fees, costs and filing fees, except as may be ordered by the arbitrator pursuant to the arbitration rules."[30] A.H.D. argues that this provision is not unconscionable because it does not waive the substantive right to recover attorney's fees.[31] Because the clause permits the award of attorney's feeds "pursuant to the arbitration rules," it would only be unconscionable with respect to FLSA claims if those rules are unfair or bar a prevailing plaintiff's recovery of attorney's fees. See Poly-America, 262 S.W.3d at 349. Because Plaintiff does not explain the rules' effects on the availability of attorney's fees under the FLSA, the court concludes she has not met her burden to establish that this provision is unconscionable.

In summary, Paragraphs 11, 12, and 13(J) are not unconscionable and do not render the agreement to arbitrate unenforceable. Because the unconscionability of these provisions

---

[30]2020 Agreement, Exhibit A to Motion to Dismiss and Compel Arbitration, Docket Entry No 13-1, p. 12 ¶ 13(J) (capitalization removed).

[31]A.H.D.'s Reply, Docket Entry No. 20, p. 6.

and that of Paragraph 15 are the only grounds on which Plaintiff opposes arbitration, the court will grant the motion to compel arbitration.

**D.  Ali and Hassan Davari May Enforce the Arbitration Agreement**

Ali and Hassan Davari argue that they may enforce the arbitration agreement against Plaintiff as non-signatories to the agreement and may otherwise adopt by reference A.H.D.'s Motion to Dismiss.[32] A nonsignatory may enforce an arbitration agreement against a signatory under certain circumstances. Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (2009). One such circumstance is where a "signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." Brown v. Pacific Life Insurance Co., 462 F.3d 384, 398 (5th Cir. 2006). Plaintiff's claims against the Davaris is based on their ownership of A.H.D. and their management of Centerfolds.[33] Plaintiff alleges Defendants' misconduct collectively and does not distinguish any actions taken by A.H.D. and the Davaris. The Davaris may enforce the arbitration agreement because Plaintiff's claims against them are the same as her claims against A.H.D., the signatory to the arbitration agreement. Accordingly, the Davaris' Motion to Join will be granted.

---

[32]Davaris' Motion to Join, Docket Entry No. 24, p. 2.

[33]Complaint, Docket Entry No. 1, pp. 3-4 ¶¶ 12-13.

### E.   The Court Will Dismiss the Action

For the reasons explained above, the court concludes that Defendants may all enforce the arbitration agreement and compel arbitration of Plaintiff's claims.  When all parties in an action are bound by an agreement to arbitrate, the court has discretion to dismiss the action.  <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992).  Plaintiff argues that the court should stay rather than dismiss the action because two additional plaintiffs have been added to the lawsuit and are not subject to Defendants' motions.[34]  Plaintiff contends that these plaintiffs were added when she filed Consent to Sue Forms that reference this action and in which two opt-in plaintiffs, Kiersten Middaugh and Ashley Osborne, agree to be represented by Plaintiff's attorney to pursue their own FLSA claims against Defendants.[35]

Individuals who file their consent to join a collective FLSA action do not become party-plaintiffs until conditional certification and court-ordered notice of the collective.  <u>See Beery v. Quest Diagnostics, Inc.</u>, Civ. No. 12-cv-00231(KM)(MCA), 2013 WL 3441792, at *3 (D.N.J. July 8, 2013).  Plaintiff has not requested that the court conditionally certify the action.  Even if she had, the agreement to arbitrate is a "'threshold question'"

---

[34]Plaintiff's Second Response, Docket Entry No. 27, p. 3 ¶¶ 9-10.

[35]Middaugh Consent Form for Wage Claim, Exhibit 1 to Plaintiff's Notice of Consent to Sue Form for Kiersten Middaugh, Docket Entry No. 14-1, p. 2; Osborne Consent Form for Wage Claim, Exhibit 1 to Plaintiff's Notice of Consent to Sue Form for Ashley Osborne, Docket Entry No. 15-1, p. 2.

that precedes conditional certification. <u>Reyna v. International Bank of Commerce,</u> 839 F.3d 373, 378-79 (5th Cir. 2016). Because Plaintiff's claims are subject to an arbitration agreement, the court does not have subject-matter jurisdiction over an FLSA collective action based on those claims. <u>White v. Turner,</u> Civil Action No. H-15-1485, 2016 WL 1090107, at *5 (S.D. Tex. March 21, 2016). Accordingly, the court will dismiss the action without prejudice.

## IV. Conclusion and Order

For the reasons explained above, the court concludes that Plaintiff has not met her burden to establish that the arbitration agreement is unconscionable, and she raises no other specific challenge to the existence or validity of the agreement to arbitrate. Because the agreement to arbitrate applies to all of the claims asserted and may be enforced by all Defendants, the court will dismiss rather than stay the action. Defendant's Motion to Dismiss Pursuant to 9 U.S.C. § 4 (Docket Entry No. 13) and Davari Defendants' Motion to Join Defendant A.H.D. Houston, Inc.'s Motion to Dismiss (Docket Entry No. 24) are **GRANTED**, and this action will be dismissed without prejudice.

**SIGNED** at Houston, Texas, on this the 28th day of May, 2020.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE